### SAM H. HAYS v. STATE.

No. A-3727.    Opinion Filed Nov. 22, 1922.
(210 Pac. 728.)

(Syllabus.)

1.    **Embezzlement—Sufficiency of Information Against Public Officer—Insufficiency of Evidence—Inadvertent Failure to Report and Irregular Application of Public Fund.** The allegations contained in the complaint held sufficient to charge embezzlement under the provisions of section 7437, Rev. Laws 1910.

(a) Held, further, that where an information states that any officer is. by law charged with the receipt, safe-keeping, transfer, or disbursement of money, and states that such money was embezzled and was not kept and disbursed as provided by law, but was appropriated to his own use, not in keeping with his trust, such averments are sufficient.

(b) Under this statute proof of an inadvertent or innocent failure to report and pay to the county treasurer, as by law provided, where there is no proof of an appropriation of the fund not in keeping with the officer's official trust, of itself and alone is insufficient to sustain the charge of embezzlement.

(c) Where a fund was actually applied as the law directs, though for good reasons it was not done in the manner and at the time prescribed by law, such irregular application alone does not constitute embezzlement under this statute.

2.    **Statutes—Offense Governed by Special Statute Rather than Penal Code.** Where statutes not a part of the Penal Code make any specific act criminal, and statutes in the Penal Code make the same act a criminal offense, the offense and punishment thereof shall be governed by the special provisions relating thereto. Section 2092, Rev. Laws 1910.

3.     **Criminal Law—Prosecution Under Either of Two Statutes of Same Class Prescribing Different Punishment.** Where two statutes of the same class make an offense punishable in different ways, an accused may be proceeded against and punished under either of such statutes. Section 2794, Rev. Laws 1910.

4.     **Embezzlement—Definition of Embezzlement in Special Statutes May be Considered.** Under proper averments the definition of embezzlement as found in section 3213, Rev. Laws 1910, may be considered in aid of defining embezzlement under the provisions of section 7437, Rev. Laws 1910, both of which statutes are specific in their nature, and not a part of the general Criminal Code.

5.     **Evidence—Records and Reports of State Examiner and Inspector but not Conclusions Admissible in Prosecution of Court Clerk.** Under the provisions of section 5115, Rev. Laws 1910, the official reports and records of the state examiner and inspector, in so far as they pertain to the issues involved, may be introduced as primary evidence, subject to explanation or impeachment. Mere conclusions of such officer, not based on his official record, are inadmissible.

6.     **Embezzlement—"Public Money" and "Revenue" Considered Synonymous.** In a proper case, where a court clerk misappropriates public money, he may be prosecuted under section 7437, Rev. Laws 1910. In such case "public money" and "revenue" may be considered synonymous.

Appeal from District Court, Washita County; Thomas A. Edwards, Judge.

Sam H. Hays was convicted of embezzlement, and he appeals. Reversed and remanded.

A. M. Beets, J. I. Howard, and Geo. B. Rittenhouse, for plaintiff in error.

The Attorney General, for the State.

BESSEY, J. The plaintiff in error, Sam H. Hays, in this opinion referred to as the defendant, was on October 23, 1919, in the district court of Washita county, convicted of the crime of embezzlement of certain public money belonging to said county in October, 1916, while the defendant was the court

clerk of said county, charged with the receipt and safe-keeping of this money, in violation of his trust as court clerk. The defendant's punishment was fixed by the court at confinement in the state reformatory at Granite for a period of three years and to pay a fine of $350. From this judgment and sentence he appeals.

While the defendant was court clerk of Washita county during the years 1915 and 1916, he kept two bank accounts, a personal account and an official court clerk's account. His official funds and the record thereof were not methodically kept, and in the course of time were inadvertently confused and found incorrect. The particular fund here involved, $175, fine and costs in a certain criminal case, was deposited with other money in his official account, as shown by the proof offered at the trial. Upon an audit of his accounts other sums were found unpaid, and the defendant, by several checks, paid to his successor in office and to the county treasurer all the money composing his official deposit. There was no evidence of a mingling of his private and the public moneys, and it appears that the particular item here referred to was included in the amount paid by these several payments to the county officials. At the close of defendant's term of office he demanded an audit of his books and accounts, offering to pay for the same himself, but this request was denied at that time. Some months later the county commissioners had an audit made and brought suit to recover the sum of $3,492.91, recovering judgment, by agreement, in the amount of $2,092.95 and costs, which defendant paid out of his personal funds. The record before us seems to indicate that these matters and discrepancies grew out of a careless system of bookkeeping or want of any system, and partly as the result of some disputed accounts for deputy, hire and special help in the court clerk's office, and there was no direct evidence of any intent to defraud or to gain any personal advantage in the use of this or

other official funds. There was evidence tending to show that defendant did not report this particular item in any monthly report, and that it was not paid over to the county treasurer at the time required by law; but there was no showing of a personal, private use of this or any of the public funds in defendant's keeping. On the contrary, there was positive evidence that this particular fund was paid over in January, immediately following the expiration of his term of office, and about three months after it was collected by him.

The amended information charges that—

"Sam H. Hays did * * * commit the crime of embezzlement in the manner and form as follows: That is to say, the said Sam H. Hays at all times from the 4th day of January, 1915, until the 2d day of January, 1917, was the duly elected, qualified, and acting court clerk of Washita county, Okla., and in said county and state, on or about the 2d day of October, 1916, the sum of $175 good and lawful money of the United States and of the value of $175 was received from one W. A. Murphy by the said Sam H. Hays, by virtue of his said office, as clerk's fees and sheriff's costs and fine in a certain criminal case No. 68, styled 'The State of Oklahoma v. Elmer Murphy,' in said case No. 68, being then and there pending in the district court of Washita county, and then and there being docketed in the criminal appearance docket No. 3 of said district court; that the said Sam H. Hays, as court clerk of said Washita county, Okla., was charged with the collection, receipt, and safe-keeping of certain public money and property belonging to said Washita county, to wit, clerk's fees for docketing, filing, and recording written instruments in said case No. 68 and for sheriff's fees for work done and performed in said case No. 68, and for fine imposed on defendant by the court in said case No. 68, as aforesaid; that the said Sam H. Hays, as court clerk of said Washita county, as aforesaid, was charged with the further duty of making verified monthly reports of work done in the preceding month to the board of county commissioners, showing the total fees charged and collected in each case and paying the same to the

county treasurer; that the sum of $175 was due the said Washita county from the said Sam H. Hays as clerk's fees for docketing, filing, and recording written instruments in said case No. 68, as aforesaid, and for sheriff's fees, for work done and performed in said case No. 68 as aforesaid, and for fine imposed on defendant by the court in said case No. 68, as aforesaid, and the said Sam H. Hays having collected said money, by virtue of said office as aforesaid, belonging to said Washita county, he, the said Sam H. Hays, did then and there unlawfully, willfully, fraudulently, and feloniously embezzle, convert, and appropriate and convert to his own use and benefit and to uses unknown to affiant and to uses not in keeping with his trust imposed upon him by law said public money so collected, in the sum of $175, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma."

The demurrer was filed to this amended information on the ground that the facts stated were insufficient to charge any offense under the statutes of this state. This motion was by the court overruled.

Besides the two general statutes in our Penal Code (sections 2243 and 2671, R. L. 1910) relating to embezzlement by officers, there are a number of other statutes defining embezzlement not found in the Penal Code proper. Section 7437, R. L. 1910, under the provisions of which this defendant was charged and tried, and which became effective May 16, 1913, is in part as follows:

"If any county treasurer, or other officer or person charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money, or any part thereof, belonging to the state or to any county, precinct, district, city, town or school district of the state, shall convert to his own use or to the use of any other person, body corporate or other association, in any way whatever, any of such public money, or any other funds, property, bonds, securities, assets or effects of any kind received, controlled or held by such officer or person by virtue of such office or public trust for safe-keep-

ing, transfer or disbursement, or in any other way or manner, or for any other purpose; or shall use the same by way of investment, in any kind of security, stocks, loan property, land or merchandise, or in any other manner or form whatever; or shall loan the same, with or without interest, to any person, firm or corporation, except when authorized by law; or if any person shall advise, aid or in any manner knowingly participate in such act, such county treasurer or other officer or person shall be deemed guilty of an embezzlement of so much of said money or other property, as aforesaid, as shall be converted, used, invested, loaned or paid out as aforesaid; and upon conviction thereof, such county treasurer or other officer or person shall be sentenced to imprisonment in the penitentiary at hard labor for a term of not less than three years nor more than twenty-one years, and also to pay a fine equal to double the amount in money or other property so embezzled as aforesaid.''

Section 3214, R. L. 1910, which went into effect June 28, 1910, is as follows:

''At each monthly meeting of the board of county commissioners or, if monthly meetings are not held, at each quarterly meeting, the clerk of the district court, the clerk of the superior court, the clerk of the county court, the county clerk and the register of deeds shall each file a verified report of the work of the preceding month or quarter, showing the total fees charged in each case, and shall pay all of such fees into the county treasury and file duplicate receipts therefor with the county clerk.''

In this connection section 3213, R. L. 1910, a portion of the same act as the section last quoted, provides that where a county officer fails or refuses to account for or to pay over public funds as the law directs, he shall be deemed guilty of embezzlement:

''Any county, township and district officer who is required by law to make monthly or quarterly reports to the board of county commissioners who fails or refuses to make such reports, or who makes a false or fraudulent report, shall

be deemed guilty of a misdemeanor and in addition to his punishment he shall forfeit his office; and when any such officer shall fail or refuse to account for or to pay over any money in his official capacity, he shall be deemed guilty of embezzlement, and in no case shall any county officer retain any perquisites of his office.''

It is claimed that this statute under which the information in this case was drawn (section 7437, R. L. 1910) is a part of a revenue statute, applying only to officers charged with the duty of collecting and disbursing taxes, that all the sections preceding and following this section so indicate, and that this statute does not apply to money collected by a court clerk. According to constitutional classifications this act, as originally passed, was a codified revenue measure which could not originate in the Senate, but after its adoption in conformity to the Constitution its provisions should be interpreted to give effect to its object and purposes. This court clerk was charged with the misappropriation of fines and costs which had become, upon their collection, a part of the public revenue to be used for the maintenance of schools and for other purposes. We think the phrase ''or other officer'' in this section includes the court clerk, and that the words ''public money'' include fines and costs collected by the court clerk. Doubtless it was the intention of the Legislature to include every kind of public revenue, whether derived from taxation or otherwise. Fines, collected by a court clerk go into the same hopper with moneys collected by direct taxation. Whenever any fund under the control of any public officer becomes public money it comes within the purview of this statute. Fulkerson v. State, 17 Okla. Cr. 103, 189 Pac. 1092.

Our constitutional provision that every act shall embrace but one subject, which shall be clearly expressed in the title, specifically excepts codifications and revenue measures. Section 57, art. 5, of the Constitution.

Defendant complains that the state failed to make out a case under section 7437, supra, for the reason that the proof failed to show that the funds in question were appropriated to defendant's use; that the defendant should have been prosecuted, if at all, under the provisions of sections 3213 and 3214.

By the terms of section 3213 a failure or refusal to account for or to pay over such funds constitutes embezzlement; in such case, under the provisions of the Criminal Code (section 2671, R. L. 1910), an embezzlement amounting to a felony. Sections 7437 and 3213, supra, are both special statutes, as distinguished from the general statutes in the Penal Code, defining embezzlement by officers.

Section 2092, R. L. 1910, is as follows:

"If there be in any other chapter of the laws of this state a provision making any specific act criminal and providing the punishment therefor, and there be in this Penal Code any provision or section making the same act a criminal offense or prescribing the punishment therefor, that offense and the punishment thereof shall be governed by the special provisions made in relation thereto, and not by the provisions of this Penal Code."

Under the provisions of sections 3213 and 3214 the illegal retention and failure to pay over the public funds would amount to an appropriation of the fund, not in keeping with defendant's trust, amounting to embezzlement as therein defined. The language used, "When any such officer (court clerk) shall fail or refuse to account for or to pay over any money in his official capacity he shall be deemed guilty of embezzlement," indicates that the willful failure or refusal alone to pay over or account for public funds as provided by law constitutes the offense. This statute was designed to prevent a county officer, on one pretext or another, from retaining for an indefinite period, for his own advantage, portions of the per-

quisites of his office, pending adjustments, audits, offsets, and claims in litigation.

The prosecution might have been brought under the provisions of section 3213, invoking the penalty provided in the Penal Code (section 2681, R. L. 1910), but the state elected to and did try the defendant under the provisions of section 7437, in which one of the material elements of the offense is a personal appropriation of funds. The state, having made its election to try the defendant under the provisions of the latter section, was bound by such election. To sustain a conviction under this section, it must be shown that there was a private appropriation of the fund as charged in the information, and the mere failure to report and pay over the fund, without any private appropriation or conversion, would not be sufficient. State v. Bunch, 23 Okla. Cr.—, 214 Pac. 1093.

This court has held in former decisions, construing section 3213, that the offense of embezzlement by an officer is complete so soon as he wrongfully fails or refuses to account for or pay over any money in his official capacity, as required by law. Warner v. Mathews, 11 Okla. Cr. 122, 143 Pac. 516; McDaniel v. Brown, 16 Okla. Cr. 149, 181 Pac. 156.

If the information in this case had been based on section 3213, the facts here shown, if the acts were corruptly done, might have been sufficient to sustain a conviction; but it was essential under the information filed to show that this officer made a private, personal appropriation of the fund, or an appropriation not in keeping with his official trust, to sustain the conviction under the provisions of section 7437, under which this action was maintained. There was no such misappropriation of this fund shown by the evidence.

Complaint is made by defendant that the court, among other instructions, gave the following:

"You are instructed that the law in force at the time the offense charged in this case is alleged to have been committed required the court clerk to file with the board of county commissioners a verified report at each monthly meeting of such board, covering the work of the preceding month, showing the total fees charged in each case and the total fees collected in each case, and to pay all such fees monthly into the county treasury, and to file duplicate receipts therefor with the county clerk, and that the failure or refusal of any court clerk to account for or to pay over any money in his official capacity constitutes the crime of embezzlement; but, in this connection, you are instructed that proof of a mere failure to pay over money, standing alone, would not support a conviction for embezzlement."

This instruction, we think, was intended to state the law applicable to all the facts proved bearing upon the issue of a personal conversion. True, the statute enjoining the duty of reporting and paying monthly is a later statute, but this statutory duty to report and pay monthly may be considered as explanatory of defendant's official conduct and to throw light upon the issue of whether or not the defendant personally converted or diverted the fund to his own advantage.

It is contended by counsel for defendant that the court erred in permitting Arthur Jones, after he had qualified as an expert licensed accountant and deputy state examiner and inspector, to testify that he had made an official examination of the official accounts of the defendant, and particular objection is made to the following:

"Q. In checking up Mr. Hays were you able to ascertain the amount he paid to his successor?

"Counsel for Defendant: We object to that as not proper rebuttal testimony.

"The Court: Well, I'll let him reopen his case for that.

"Q. Did you ascertain? A. Yes, sir; I did.

"Q. Did Mr. Hays pay his successor all the money he was due Washita county?

"Counsel for Defendant: Now, that's objected to as not proper rebuttal, and the witness not being qualified in that regard, and calling for a conclusion of the witness, the record being the best evidence, incompetent, irrelevant, and immaterial.

"The Court: Overruled.

"Counsel for Defendant: Exceptions.

"Q. You may answer. A. He did not pay his successor all the money that was due Washita county—all of it.

"Counsel for Defendant: I move to strike the answer of the witness from the record and ask the court to instruct the jury not to consider it, for the reason that it is incompetent and a conclusion based on no predicate, and not sufficient predicate for the admission of such testimony.

"The Court: Overruled.

"Counsel for Defendant: Exceptions.

"The Court: Anything further?

"Counsel for Defendant: Nothing further.

"Comes now the defendant and moves the court to instruct the jury to return a verdict of not guilty for the reason that the evidence is insufficient to support a verdict of guilty under the information in this case and of the crime charged therein.

"The Court: Overruled.

"Counsel for Defendant: Exceptions.

"The Court: Now, upon consideration the court is of the opinion that the last question asked and the answer thereto should be stricken out, and, gentlemen of the jury, it is stricken and withdrawn from your consideration, and is not to be considered by you for any purpose whatever in making up your verdict in this case."

Defendant contends this evidence was incompetent and prejudicial, and that the error was not cured by its withdrawal from the jury. Under the circumstances here we think this objection is well taken. This examiner's testimony, authenticating his official reports as well as the reports themselves, was competent as tending to throw light upon the question of whether or not the offense was committed, but mere conclusions of the examiner, independent of his official report, are incompetent. For the reasons previously stated, the motion to direct the jury to return a verdict of not guilty should have been sustained.

With the contention of defendant that the investigations, reports, and findings of this examiner and inspector were not the best evidence we cannot agree. This was a state officer, charged with the duty of examining the books and accounts of officers or custodians of state or county funds and making written reports thereof, to be filed and kept in his office, for the use of the executive department and others. Ample provisions are made to facilitate such examinations, so that the findings and reports will correctly state the facts. This officer, in our opinion, comes within the purview of section 5115, R. L. 1910, as follows:

"The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the district court, justice of the peace, police judge or other public officers, may be received in evidence in any court."

This rule is a reasonable one, well calculated to meet the ends of justice. In this instance it would have been unreasonable to expect the jury to inspect, audit, and reach correct conclusions from the introduction of a great multitude of book entries, reports, receipts, and complicated documentary evidence. The average jury would be lost in a maze of compli-

cated facts and figures, from which they might or might not make correct deductions. The state examiner and inspector is a disinterested, skilled accountant, with facilities for arriving at correct results, and his official written reports, it seems to us, under this statute should be received as primary evidence for what they might be worth. Of course, the correctness of his deductions may be challenged on cross-examination or by direct evidence to the contrary. Bradshaw v. State, 18 Okla. Cr. 619, 197 Pac. 715; 22 Corpus Juris, "Evidence," p. 615.

Since it appears that the defendant voluntarily paid the county treasurer the fine and costs here involved, and since there appears to have been no willful personal appropriation of this item, it follows that a material element of the crime charged under the provisions of section 7437, R. L. 1910, was not proved, and for that reason the cause should be reversed and remanded; and it is so ordered.

DOYLE, P. J., and MATSON, J., concur.